# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | | |
|---|---|---|
| **MICHAEL SMITH,** | **:** | |
| | **:** | |
| **Plaintiff** | **:** | |
| | **:** | |
| **v.** | **:** | **5:05-CV-111 (WDO)** |
| | **:** | |
| **CITY OF UNADILLA, et al.,** | **:** | |
| | **:** | |
| **Defendants** | **:** | |

## ORDER

Plaintiff filed this suit against the City of Unadilla and various City officials claiming racial discrimination, due process violations, libel, slander and conspiracy to violate his civil rights. Plaintiff claims that City officials, who are African-American, discriminate against Caucasian law enforcement officers by not giving Caucasians promotions, by allowing more flexible schedules for African-Americans and by dropping criminal charges filed by Caucasians while pursuing charges filed by African-Americans. The matter is now before the Court on Defendants' motion for summary judgment.

### *Factual and Procedural Background[1]*

Plaintiff, who is Caucasian, worked part-time as a police officer for the Unadilla Police Department from September 1, 2003 until December 20, 2003. Plaintiff was also working part-time for the Rochelle Police Department. On December 20, 2003, Plaintiff

---

[1] These facts are those presented by the Defendants as the material, undisputed facts in the record with any dispute by the Plaintiff noted and all facts construed in Plaintiff's favor as the non-movant.

began working for Sumter County as a law enforcement officer but resigned before he could be terminated. Plaintiff turned in his vehicle key, along with a letter of resignation, to the dispatcher and said that Sumter County could "kiss his ass" or "take this job and shove it" – or words to that effect – for $9.00 per hour. Plaintiff had been accused of conduct unbecoming an officer, and, at the time he returned to work with the Unadilla Police Department in April 2004, there was already an ongoing investigation by P.O.S.T. into that incident, as well as an incident wherein Plaintiff, while working for the Centerville Police Department, assaulted a man whom he caught in bed with his girlfriend.[2] Plaintiff requested a hearing to appeal the disciplinary action proposed by P.O.S.T. but failed to follow the proper procedures and his request for a hearing was dismissed. Plaintiff was thereafter placed on probationary status. The matter was eventually presented for a hearing and the charges were dismissed.

After his resignation from Sumter County, Plaintiff returned to part-time work with the Unadilla Police Department on April 19, 2004 earning $9.25 per hour. Plaintiff became a full-time employee on May 17, 2004 at which time his pay was increased to $10.00 per hour. On January 1, 2005, Plaintiff received a raise to $10.92 per hour. Plaintiff's pay was never reduced while working for the Unadilla Police Department and he never received a demotion.[3] Plaintiff was hired into the Unadilla Police Department by Chief of Police Greg

---

[2]Plaintiff's termination by the City of Centerville was the subject matter of a lawsuit pending in the Middle District of Georgia, Civil Action No. 5:04-CV-366, wherein another district judge granted the defendants summary judgment in September of 2006.

[3]Plf.'s Dep. at 8.

Hattaway, a Caucasian. When Chief Hattaway was terminated, Major Leonard Smith, an African-American, took over as Acting Chief. Michael Sullivan, a Caucasian, was eventually hired as Chief of Police.[4] Other officers who worked for the Unadilla Police Department with Plaintiff include: Captain Ernest Dennard, African-American; Major Leonard Smith, African-American; David Smith, Caucasian; Castonio Lucas, African-American; Shannon Shewman, Caucasian; Timothy Brice, African-American; and Jerry Hightower, Caucasian.

On January 1, 2005, Plaintiff and Sergeant Shewman stopped a vehicle driven by Terry Jerome Felder. During the course of the stop, Felder attempted to flee and Plaintiff fired a warning shot. Plaintiff claims that no one ever told him it is inappropriate to fire a warning shot, but concedes that P.O.S.T. probably advises against firing warning shots. The Standard Operating Procedures for the Unadilla Police Department specifically state that warning shots are prohibited, although Plaintiff states he never saw this written procedure.[5] A written reprimand was placed in Plaintiff's personnel file regarding the warning shot. Plaintiff admitted in his deposition that he does not know if this action was taken because of his race. The charges against Felder and his party were dismissed by Major Smith.

In the early morning hours of Sunday, February 13, 2005, Plaintiff was ordering a

---

[4]Michael Sullivan began working as Chief of Police in Unadilla on or March 1, 2005, roughly two weeks after Plaintiff stopped active duty due to a workers' compensation injury. Before that, Sullivan had worked for the City of Centerville as police chief and had terminated Plaintiff during Plaintiff's probationary period. Sullivan felt that Plaintiff was a below-average officer when with Centerville and Sullivan had not changed his opinion of Plaintiff when Sullivan worked as Police Chief of Unadilla. Sullivan Dep. at 55.

[5]Sullivan Dep. at 53.

disorderly crowd of people to disperse from outside a nightclub after closing time. Plaintiff ordered the vehicle in which Sylvia Cherry was a passenger to stop and ordered Cherry to exit the vehicle because Cherry was yelling to others in the crowd that they did not have to leave. Cherry refused to get out of the vehicle so Plaintiff placed his left arm in the window to unlock the car door and Cherry attempted to close the window on his arm. The videotape from Sergeant Lucas' vehicle shows that Plaintiff removed, or attempted to remove, his left arm from the window, grabbed his flashlight with one or maybe both of his hands and slammed the flashlight into the window, shattering the glass.[6] Another deputy removed Cherry from her vehicle and placed her in Sergeant Lucas' patrol car. Plaintiff took Cherry out of Sergeant Lucas' vehicle and placed her in his own vehicle to transport her to the jail. Plaintiff asked if Cherry was hurt and she responded she was not. Plaintiff turned on an audiotape recorder in his vehicle to record any conversation between him and Cherry on their way to the jail. Plaintiff later removed the tape, which belongs to the City of Unadilla, and has never produced the original even though ordered to do so by the Chief of Police.[7]

Plaintiff and Cherry arrived at the jail at approximately 2:00 a.m. Plaintiff claims he told the on-duty supervisor at the jail that he would be charging Cherry with felony obstruction of justice, as well as other charges (possibly resisting arrest and disorderly conduct), but Plaintiff did not complete any paperwork regarding the charges nor did he tell Cherry specifically what charges would be filed. Instead, Plaintiff drove himself to the Perry

---

[6]Sullivan Dep. at 49.

[7]The Court notes that a copy of the videotape of this incident was produced to the Court. Further, Plaintiff contends he never turned over the audiotape because he feared it would be lost.

Emergency Room to have his arm examined. Plaintiff did not take an incident report with him and did not fill out an incident report until later that morning, at home, after he had left the hospital, returned to the Unadilla Police Department, driven to the Sheriff's Department to speak with Sergeant Lucas and then gone home to sleep for a few hours.[8] While Plaintiff was filling out the incident report, and before he finished it, he learned that Cherry had been charged with misdemeanor obstruction rather than felony obstruction and released from jail. Plaintiff does not remember telling Sergeant Lucas what charges he planned to bring against Cherry when he spoke with him and admits there were no formal charges pending against Cherry when Sergeant Lucas filed the misdemeanor charge. According to Plaintiff, Sergeant Lucas left him a message that the Mayor and Acting Chief of Police Smith had determined to dismiss the charges but Sergeant Lucas persuaded them to charge at least misdemeanor obstruction so that Plaintiff could file felony charges when he returned.[9]

The next day, Monday, February 14, 2004, Plaintiff tried to talk to the judge and district attorney about the charges. Plaintiff thinks he talked to the City Manager but cannot remember what the City Manager said. Plaintiff called the magistrate judge who said Plaintiff could not charge Cherry with a felony if the charge had already been reduced to a misdemeanor. The District Attorney's assistant explained that Leonard Smith was technically Plaintiff's boss and therefore had the authority to reduce the charges.[10] After this

---

[8] Plf.'s Dep. at 43.

[9] Plf.'s Dep. at 45.

[10] Id. at 49.

incident, Plaintiff was on workers' compensation leave until August 1, 2005 when his doctors released him to return to work.[11]

Plaintiff filed this lawsuit on March 31, 2005, on behalf of himself and purportedly for a class of Caucasian Unadilla police officers. After a hearing and carefully considering the parties' written and oral arguments on the class certification issue, the Court denied class certification and ordered the matter to proceed with further discovery.

Plaintiff alleges racial discrimination and denial of equal protection in that he was denied a promotion, career advancement and compensation that minority officers received and claims he was retaliated against for refusing to falsify a police report. In his deposition, Plaintiff admitted he could name no specific rank or promotion to which he thought he was entitled to but denied.[12] Rather, for one of the promotions, for Captain, it was Plaintiff's personal opinion that no one should have been promoted to Captain.[13] Plaintiff can name no compensation he thought he was denied.[14] Plaintiff concedes that he does not know if he was ever asked to falsify his reports and that the alleged retaliation – termination – did not actually take place because he is still employed by the Unadilla Police Department.[15]

_____

[11]Ms. Cherry filed a lawsuit against the City based on this incident which the City has since settled.

[12]Plf.'s Dep. at 67.

[13]Id. at 63.

[14]Id. at 63, 75.

[15]The record is not clear regarding whether Plaintiff is actually still an employee of the city, whether he is still considered to be on medical leave or whether he has actually been terminated. It appears the city has simply placed his employment status on hold pending the outcome of this case. See Sullivan Dep. at 38.

Plaintiff alleges violations of substantive and procedural due process because he was allegedly terminated without notice, his reputation was defamed and he was not allowed to interview for the position of Chief of Police. Plaintiff concedes he does not have a legal right to interview for every position for which he applies and that, even if he had interviewed, he would not have been promoted to the position because the other (Caucasian) candidate was more experienced and qualified.[16]

Plaintiff alleges conspiracy to obstruct justice, to prevent an officer from performing his duties, to intimidate testimony by force and to deprive him of his federally protected rights in that (1) charges he intended to bring against Ms. Cherry were reduced from felonies to misdemeanors; (2) charges brought by Caucasian officers against minority defendants are routinely dropped, whereas charges by minority officers against Caucasian defendants are not; (3) notice of his termination was sent to P.O.S.T. through a "C-11 form" with the approval of the City of Unadilla Defendants; and (4) the City of Unadilla Defendants knew statements released to the press about him were false. Plaintiff contends his evidence of a conspiracy is that Ms. Cherry's uncle who is on City Council was called after Cherry was arrested which, according to Plaintiff, resulted in Cherry's charges being dropped. Plaintiff acknowledges he has no legal right to have a suspect prosecuted on the specific charges he has filed because the district attorney can change the charges when negotiating plea agreements. Plaintiff identified only two cases in which the charges against minority suspects were either dropped or reduced (Cherry and Felder incidents) but in both cases

---

[16]Plf.'s Dep. at 19, 85.

Defendants contend Plaintiff's actions were unprofessional and the cases warranted dismissal. The only example Plaintiff gives of a Caucasian who has not had the charges against him reduced is someone whom Plaintiff himself – not a minority officer – arrested and who is suing Plaintiff for excessive force. Plaintiff acknowledges the City of Unadilla Defendants did not approve of the action taken by Acting Chief of Police Smith (who is not a named Defendant) to notify P.O.S.T. of Plaintiff's termination through the C-11 form, that he has not actually been terminated and that he can identify no false statements released to the press.

Plaintiff alleges personal injury and negligence claiming the City of Unadilla Defendants had a duty to prevent his arm injury. Defendants contend Plaintiff can identify no way in which the City of Unadilla Defendants could have prevented his injury which was caused by an arrestee when Plaintiff disregarded his training and placed his arm through the window of a moving vehicle. Defendants also argue that Plaintiff has sued his employer for an injury arising out of and in the course of employment, which action is barred by Georgia's Workers' Compensation Act, specifically O.C.G.A. § 34-9-11(a).

Plaintiff alleges defamation, libel and slander based on an alleged statement by a city official in the course of Plaintiff's workers' compensation case in which the official allegedly stated that Plaintiff "was not hurt" in the Cherry incident. Plaintiff did not however identify any false or defamatory remark released to either the press or the Georgia Municipal Association. At most, Plaintiff can proffer the C-11 form filed with P.O.S.T. by Acting Chief of Police Leonard Smith, but Leonard Smith is not a Defendant in this lawsuit and the named

Defendants specifically informed P.O.S.T. they did not approve or authorize the C-11 form and asked that it be withdrawn.

Before reaching the individual claims, the Court notes that the Unadilla Police Department is not an entity capable of being sued in this case and is hereby dismissed. See Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit"); Lovelace v. Dekalb Cent. Prob., 144 Fed. Appx. 793, 795 (11th Cir. 2005) (citing other decisions that have recognized sheriff's and police departments are not subject to suit under Georgia law). The Unadilla Police Department is therefore DISMISSED from this case. Further, the claims against the individually named defendants in their official capacities are redundant of the claims against the City of Unadilla and are hereby DISMISSED. See Owens v. Fulton County, 877 F.2d 947, 952 n.5 (11th Cir. 1989) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)).

### Summary Judgment Standard

Summary Judgment is appropriate when the pleadings, depositions and affidavits submitted by the parties show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Supreme Court has explained that the moving party's burden may be discharged "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In Celotex, the Court held that summary judgment is appropriate against

A party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Id. at 322-23. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact." Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). "Summary judgment . . . is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (citing Fed. R. Civ. P. 1; Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984)).

### Qualified Immunity

The individual Defendants contend they are entitled to qualified immunity from the claims against them in their individual capacities pursuant to Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) because, they argue, Plaintiff failed to establish they violated any clearly established law. See also Hope v. Pelzer, 536 U.S. 730 (2002). If Defendants herein, who are government officials, show they were acting within the scope of their discretionary authority regarding the acts complained of by Plaintiff, Plaintiff must show that Defendants violated "clearly established statutory or constitutional rights of which a reasonable person

would have known," i.e., that they had "fair warning" that their actions were unlawful. Hope, 536 U.S. at 739; Lassiter v. Alabama A&M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994). Therefore, to determine whether the individual defendants are entitled to qualified immunity on any claim, the Court will analyze whether Plaintiff can establish any of the violations alleged under the various statutes and constitutional principles cited.

### Equal Protection Claim

Plaintiff alleged in the Complaint that Defendants violated his right to equal protection by denying him promotions, denying him compensation offered to African-American officers and denying him career advancement opportunities. Because Plaintiff has not presented any direct evidence of discrimination, his employment discrimination claim is properly analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which applies to both Title VII claims and § 1983 claims. Koch v. Rugg, 221 F.3d 1283, 1291 n.31 (11th Cir. 2000). Plaintiff Smith must prove: "(1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted." Denney v. City of Albany, 247 F.3d 1172, 1183 (11th Cir. 2001). If he does, Defendants must 'articulate some legitimate, non-discriminatory reason for the employee's rejection.'" Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1184 (11th Cir. 1984). Courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, [their] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Damon v. Fleming

11

Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir.1999). Federal courts do not "sit as a super-personnel department that reexamines an entity's business decisions," nor do they "sit to second-guess the business judgment of employers." Davis v. Town of Lake Park, 245 F.3d 1232, 1244 (11th Cir. 2001) (citations omitted).

In the case at bar, Plaintiff provided a great deal of speculation, assumptions and hypotheticals as to why he was possibly treated differently from his African-American colleagues. However, a plaintiff's belief that some action by an employer was discriminatory does not show that discrimination occurred, or that Plaintiff was treated in a way that violated his Equal Protection rights. Plaintiff failed to present any *evidence* to establish a prima facie case of discrimination or any type of Equal Protection violation.

### *Promotions*[17]

Plaintiff admitted in his deposition, and the evidence supports the finding, that he was not qualified for the position of Chief of Police, or at least was not *as qualified* as the individual chosen. During the time in question, Plaintiff had five years of law enforcement experience, including time as a jailer and only two years of actual experience as a mandated peace officer. He clearly was not as qualified as the individual promoted to Chief who had far more years of experience - more than 20. Moreover, Plaintiff conceded he cannot think of a promotion or rank he was entitled to but denied. The only other possible promotion he

---

[17]Defendants noted, and probably rightly so, that it appears Plaintiff abandoned any claims for denial of promotion, retaliation, defamation and personal injury based on the arguments, or lack thereof, in his response brief. However, because it is not entirely clear that Plaintiff intended to abandon any claims, the Court will address all claims to the extent possible based on the arguments presented in the response brief and previous memoranda.

may have intended to assert to show discriminatory motive was the promotion to Captain and Plaintiff never applied for that position. Accordingly, Plaintiff failed to make out a prima facie case of discriminatory failure to promote.

### *Career Advancement*

It is unclear exactly what Plaintiff is claiming by denial of "career advancement." Plaintiff claims he should not have been reprimanded for firing a warning shot because he never saw a written policy on the issue, that he should not have been terminated and that no C-11 form should have been sent to P.O.S.T. regarding his termination. As explained below, Plaintiff failed to establish any adverse actions based on race that affected his career advancement opportunities or that a similarly situated person was treated more favorably. Accordingly, Plaintiff failed to make out a prima facie case of discriminatory denial of career advancement.

### *Reprimands*

The reprimand Plaintiff received for the warning shot, a notation in his employment file, resulted in no loss of pay, position or benefits and therefore did not constitute an adverse employment action. <u>Town of Lake Park</u>, 245 F.3d 1232, 1240-1242 (11th Cir. 2001) (negative performance evaluations that resulted in no tangible consequences, such as loss of pay or benefits or further discipline, are not sufficient to qualify as adverse employment action because any harm they cause is too speculative). Plaintiff initially claimed that Caucasian officers were required to work all hours for which they were paid while African-American officers were not. There is absolutely no evidence of this and the only evidence

in this regard is Chief Sullivan's testimony that he did not believe that occurred.[18]  In his deposition Plaintiff conceded he suffered no loss of pay or demotion while working for the Unadilla Police Department.  Instead, he now claims only that the reprimand is what prevented him from interviewing for the position of Chief of Police.  But, again, Plaintiff was not as qualified for that position as the individual who received the position.  Further, Plaintiff identified no other person of any race who committed the same infraction who was disciplined in a more favorable way.  Accordingly, Plaintiff failed to make out a prima facie case of discriminatory reprimands.

### *Termination*

Plaintiff conceded during his deposition that he has not actually been terminated, or at least that he is unsure of his employment status.  There are documents in the record reflecting some of the Defendants' intent to *recommend* his termination at some point in the future based on the Sylvia Cherry incident but no documentation actually shows a final termination.[19]  After the C-11 form was sent to P.O.S.T. regarding Plaintiff's termination, Chief Sullivan sent a letter to P.O.S.T. instructing them to withdraw the letter because Plaintiff had not been terminated.  Since it is unclear whether Plaintiff was terminated, is still an employee or is on some sort of "leave" status, the Court is unable to thoroughly address that claim.  However, the Court will note that even if Plaintiff had been terminated for firing

---

[18]Sullivan Dep. at 45.

[19]These documents, attached with Sullivan's deposition, are workers' compensation documentation, letters from Plaintiff's superiors to Plaintiff and others regarding Plaintiff, internal memos, etc.

the warning shot, or fired for the Sylvia Cherry incident, or both, there is no evidence whatsoever it would have been based on any type of racial discrimination or Equal Protection violation. Accordingly, Plaintiff failed to make out a prima facie case of discriminatory termination.

### *Submission of C-11 Form to P.O.S.T.*

Plaintiff contends that Acting Chief Smith's submission of the C-11 form to P.O.S.T. was an adverse action that denied him potential career advancement. While notifying P.O.S.T. that Plaintiff had been terminated could conceivably be harmful to Plaintiff's career if Plaintiff had in fact been terminated, Major Smith, who has not been named a Defendant, is the one who submitted the C-11 form without Defendants' approval. This Court finds no basis to impose upon Defendants any type of respondeat superior liability considering that several of the Defendants took actions to recall the P.O.S.T. notice. If any notation remains in P.O.S.T.'s files regarding any ongoing matter with Plaintiff that would in fact be a true statement as it appears the issues with Cherry, Felder and others remain under investigation to some extent. Furthermore, even if the submission of the form to P.O.S.T. was "adverse" to Plaintiff, there is no evidence whatsoever it was an action taken against Plaintiff for discriminatory or retaliatory reasons. Accordingly, Plaintiff failed to make out a prima facie case of discriminatory retaliation as to the C-11 form.

### *Compensation*

To state a prima facie case of intentional discrimination based on Plaintiff's compensation, he must establish that similarly situated comparators outside of his racial

category received higher compensation than the Plaintiff and Plaintiff was qualified to also receive the higher wage. <u>Cooper v. Southern Co.</u>, 390 F.3d 695, 735 (11th Cir. 2004) (citations omitted). "The comparators must perform jobs similar to the plaintiff's; thus, the plaintiff must show that, in [his] job, [he] 'shared the same type of tasks' as the comparators." <u>Id.</u> (citation omitted). Plaintiff admitted in his deposition that he can identify no compensation he felt he was denied. He never received a reduction in pay, received several raises in pay and was never demoted. Plaintiff alleges that Major Smith was allowed to clock in when he was not working, that Captain Dennard was allowed to leave the jurisdiction while on the clock and that Sergeant Brice was permitted to work hours different from those he was scheduled to work. As Defendants point out however, Major Smith and Captain Dennard are not valid, legal comparators to Plaintiff because Major Smith and Captain Dennard are of a higher rank and would understandably have different, and perhaps even more favorable, schedules, if they in fact even had "more favorable" schedules of which there is no evidence. Plaintiff admitted he does not know what the other individuals were paid or how they were paid. To the extent Plaintiff argues that accommodations were made for other officers' schedules and not his own, this argument also fails because Plaintiff was permitted to adjust his hours so that he could also work with his father. Finally, when Major Smith became Acting Chief of Police, Plaintiff contends he was moved to the night shift within two weeks. However, that change alone does not constitute an adverse employment action in the absence of a demotion, loss of benefits, loss of pay or adverse change in future opportunities that are concrete as opposed to merely speculative. Accordingly, Plaintiff

failed to make out a prima facie case of discriminatory compensation.

### Retaliation

"A plaintiff in a retaliation case must establish a prima facie case by showing that '(1) the plaintiff engaged in a statutorily protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse action.'" <u>Suber v. Seminole County</u>, 78 F. Supp. 2d 1298, 1308 (M.D. Fla. 1999) (citations omitted). In the case at bar, Plaintiff alleged in the Complaint that his protected activity was refusing to falsify police reports. However, he admitted during his deposition that he does not know if anyone ever asked him to falsify a report. This claim borders on a contemptibly frivolous claim considering Plaintiff's later admission. Second, Plaintiff claims the retaliatory action taken against him was termination, but he concedes that he has not been terminated and it appears he is still a City of Unadilla employee. Plaintiff therefore has shown no causal connection between this action and Plaintiff's previously alleged (and now abandoned) claim of refusal to falsify police reports. Accordingly, Plaintiff failed to make out a prima facie case of discriminatory retaliation.

### Due Process Claims

Plaintiff claims violations of "due process" in that he was allegedly defamed by Defendants, was allegedly denied the opportunity to interview for promotions in Unadilla and was allegedly prohibited from interviewing with other agencies. Public employment has remained "largely outside the scope of substantive due process jurisprudence" because substantive due process does not protect state-created employment rights. <u>McKinney v. Pate</u>,

20 F.3d 1550, 1556 (11th Cir. 1994) (substantive due process rights are created only by the United States Constitution and thus violation of a substantive due process right is complete when it occurs).

> A plaintiff who asserts that a procedural due process violation has occurred, bears the initial burden of establishing that a protected property interest exists. If a plaintiff establishes that a protected property interest exists, the process due in abridging that right is governed by federal law. Therefore, once a property right has been identified, the court must determine whether due process was accorded. The essential elements of due process are notice and an opportunity to be heard. Procedural due process, however, does not mandate a particular result, only a constitutionally adequate procedure. Accordingly, the Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill advised personnel decisions.

Hunter v. City of Warner Robins, 842 F. Supp. 1460, 1466 (M.D. Ga. 1994) (citations omitted). Plaintiff failed to present any evidence that he was denied any type of procedure due him regarding the status of his employment before he went on medical leave or thereafter. As to his defamation claim, Plaintiff failed to present any evidence that he was disciplined or terminated on the basis of *false* reasons publicized by the Defendants that implicated a protected liberty interest in Plaintiff's reputation and ability to gain future employment. Doe v. Garrett, 903 F.2d 1455, 1462 (11th Cir. 1990).

"The Supreme Court . . . has held that injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment. . . . The Court explained that, in order to invoke the procedural protections of the Due Process Clause, a plaintiff would need to establish more than a mere defamation claim." Behrens v. Regier, 422 F.3d 1255, 1259 (11th Cir. 2005) (citations omitted). The Supreme Court has established what has come to be known as the "stigma-plus" test. A

plaintiff claiming defamation by a government official or entity must establish defamation "plus" the violation of some more tangible interest before the plaintiff is entitled to invoke the Due Process Clause. Courts are instructed to determine whether the state action in question significantly altered or extinguished a right or status previously recognized by state law. Id. at 1259-1260 (citations omitted). The only possible interest Plaintiff identified was consideration for a promotion or prospective future employment by a different law enforcement agency. Under Georgia law, "a prospective promotion is not a property or liberty interest protected by the fourteenth amendment or the Georgia constitution." Ellison v. Dekalb County, 511 S.E.2d 284, 286 (Ga. App. 1999).

Plaintiff Smith cannot establish an actionable claim under the "stigma plus" test because (1) he presented no evidence of a false statement about him by Defendants and (2) he failed to identify a protected interest that was harmed by any alleged defamation. Further, Plaintiff did not have a liberty or property interest in interviewing for the positions of Captain and Chief. Plaintiff therefore failed to establish a violation of the Due Process Clause of the Fourteenth Amendment.

### *Conspiracy*[20]

---

[20]As evidence of the "conspiracy," Plaintiff offered the depositions of other officers from his workers' compensation case who provided cumulative testimony about the Sylvia Cherry incident. Although these individuals had personal knowledge of some of the facts relevant to the case at bar, the Federal Rules of Evidence do not permit the admission of this testimony because it: (1) does not have a tendency to make the existence of any fact of consequence more probable or less probable than it would be without the evidence - F.R.E. 401; (2) its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, considerations of undue delay, waste of time and needless presentation of cumulative evidence - F.R.E. 403; (3) the parties against whom the testimony is now offered, Defendants herein, did not have a similar motive to develop the testimony by direct, cross or redirect examination based on the different issues and facts involved - F.R.E. 804(b)(1); and, (4) there is no showing that Plaintiff made it known to the Defendants sufficiently in advance of providing the

In his Complaint, Plaintiff alleged conspiracy claims pursuant to 42 U.S.C. § 1985(1), (2) & (3) based on the Defendants' alleged agreement to prevent him from performing his duties, to obstruct justice, to intimidate testimony and to deprive him of federally protected rights.  However, he cannot establish a conspiracy claim pursuant to any of these provisions because there is no legal or factual basis for the claims.  "On its face, § 1985(1) relates solely to federal officers and federal office holders."  <u>Canlis v. San Joaquin Sheriff's Posse Comitatus</u>, 641 F.2d 711, 718 (9th Cir. 1981).  <u>But see</u> <u>Chappell v. Rich</u>, 340 F.3d 1279, 1283 (11th Cir. 2003) (court of appeals addressed "right of court access by state agents who intentionally conceal the true facts about a crime").  "Congress meant Section 1985(2) to protect a party based on his physical presence while attending or testifying in court."  <u>See Kimble v. D. J. McDuffy, Inc.</u>, 648 F.2d 340, 348 (5th Cir. June 18, 1981).  "Section 1985(2) was not designed as a vehicle to remedy such allegedly tortious acts of employers against employees pursuing workmen's compensation or personal injury claims.  Rather, it was intended to protect against direct violations of a party or witness's right to attend or testify in federal court. This clear congressional purpose is best served by construing the statutory language in its ordinary meaning so that only direct interference with the federal courts is prohibited."  <u>Id.</u>  Plaintiff therefore may not proceed on a conspiracy claim pursuant to

depositions to give the Defendants a fair opportunity to rebut the same - F.R.E. 807.  Although the facts are construed in a plaintiff's favor on a motion for summary judgment, the right of submitting evidence, that is restricted by the federal rules, is not a carte blanche to the plaintiff to throw in bits and pieces of evidence from any source imaginable that may or may not be relevant, particularly when the defendants have not had the opportunity to substantively challenge the evidence presented.

subsection (1) or (2).

"The elements of a cause of action under § 1985(3) are (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Evans v. Ga. Peace Officer Stds. & Training Council, 2006 WL 870335, at *4 (N.D. Ga. March 29, 2006) (citation omitted).

> The purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law; as such, a claim under § 1985(3) requires the proof of invidious discriminatory intent as well as the violation of a serious constitutional right protected not just from official, but also from private, encroachment. Under the first element of a § 1985(3) claim, a plaintiff must show an agreement between the members of the alleged conspiracy. Although the existence of a conspiracy may be supported by circumstantial evidence, there must be some indication that the individuals were acting, in some sense, in concert. Where there is no indication of an agreement to act against the rights of an individual there is no cause of action under § 1985.

Id. (citations omitted).

Plaintiff failed to present evidence of a §1985(3) claim. Although he contends Defendants obstructed justice and allegedly deprived him of his federally protected rights when they dropped or reduced charges brought by him against minority offenders, in his Complaint he only specified the incident involving Ms. Cherry. In his deposition, Plaintiff proffered the charges that were dropped against Felder, the suspect at whom Plaintiff fired a "warning" shot in violation of the department's policy. Major Smith, who is not a

defendant in this case, is the one who made the decision to drop the charges against Felder. Plaintiff does not know if anyone else was involved in that decision. Therefore, Plaintiff cannot prove there was any agreement or conspiracy among the defendants named herein regarding dropping the charges against Felder. As for the charges against Ms. Cherry, Plaintiff concedes he never filed formal felony charges against Cherry. No group of individuals could have "conspired" to drop any charges that did not exist. But, even if he could prove an agreement to reduce the charges despite Plaintiff's intention, reducing the charges against Cherry did not affect any of Plaintiff's federally protected rights.

Plaintiff contends he had a "right" to arrest Ms. Cherry for allegedly violating various laws. Plaintiff cites case law that refers to an officer's "right" to make an arrest when there is clear probable cause that an offense has been committed. See generally McCormick v. City of Fort Lauderdale, 333 F.3d 1234 (11th Cir. 2003) (citing Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (Graham v. Connor, 490 U.S. 386, 394-395 (1989)). However, this "right" as addressed by those cases refers to a law enforcement officer's *duty* to arrest an individual where this is probable cause that an offense has been committed and a suspect's Fourth Amendment *right* to be secure in their persons against unreasonable searches and seizures. This language does not however confer upon an officer a "right to arrest and/or charge" that may be asserted against the government entity that employs the officer. Accordingly, Plaintiff failed to show that the Defendants conspired to deprive him of any protected rights.

### State Law Claims

Because the Court has dismissed all federal claims over which it had jurisdiction, it declines to exercise supplemental jurisdiction over the state claims and those are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c).

### *Punitive Damages*

Because the Court has dismissed all claims, any claim for punitive damages is dismissed as moot. However the Court also finds that those claims asserted against the City must be dismissed pursuant to Newport v. Fact Concerts, 453 U.S. 247 (1981).

### *Conclusion*

Plaintiff Smith admitted that (1) most of the decisions about which he complains in this case were not motivated by race, (2) he was never denied a promotion, denied compensation or demoted, (3) he had no legal right to interview for the position of Chief of Police, (4) he was not as qualified for the position of Chief of Police as the candidate who received the job who had 20 years of experience, (5) he never applied for the position of Captain, (6) he has no legal right to bring specific charges against an arrestee, (7) he has not been terminated, (8) no false statements about him were publicly released and (9) he was not asked to falsify reports. Because Plaintiff failed to identify any action taken by any of the individual defendants that violated clearly established law of which they should have been aware, the individual defendants are entitled to qualified immunity on all claims. Based on Plaintiff's own admissions and his failure to present any evidence whatsoever to support any of his claims, Defendants' motion for summary judgment is GRANTED and this case is dismissed against all defendants with prejudice.

**SO ORDERED** this 11th day of January, 2007.



**S/**
**WILBUR D. OWENS, JR.**
**UNITED STATES DISTRICT JUDGE**